UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

| | | |
|---|---|---|
| **B&B ENTERTAINMENT, LLC**, | ) | |
| a Florida limited liability company, | ) | |
| d/b/a "The Playhouse", | ) | |
| | ) | **CASE NO:** |
| Plaintiff, | ) | |
| vs. | ) | |
| | ) | |
| **CITY OF WEST PARK, FLORIDA**, | ) | |
| a Florida municipal corporation, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | / | |

# COMPLAINT FOR DECLARATORY JUDGMENT
# AND PERMANENT INJUNCTION

Plaintiff B&B ENTERTAINMENT, LLC brings this suit pursuant to 42 U.S.C. §1983, seeking a judgment declaring that certain Ordinances of the CITY OF WEST PARK, FLORIDA violate the First and Fourteenth Amendments on their face and as applied to this Plaintiff. Plaintiff further prays for issuance of an injunction against those unconstitutional Ordinances.

## JURISDICTION

1.     This suit is brought pursuant to 42 U.S.C. §1983:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

2.      This Court has "Federal Question" jurisdiction pursuant to 28 U.S.C. §1331 to hear cases arising under the Constitution of the United States, under 28 U.S.C. §1343(3) to redress the deprivation under color of state law of any right, privilege or immunity secured by the Constitution and under 28 U.S.C. §1343(4) to secure equitable relief or other relief for the protection of civil rights.

3.      The Court has the authority to issue declaratory judgments and permanent injunctions pursuant to 28 U.S.C. §§2201 and 2202, and Rule 65, Fed.R.Civ.P.

4.      The Court may enter an award of attorney's fees pursuant to 42 U.S.C. §1988.

5.      This Complaint seeks declaratory and injunctive relief to prevent violations of the Plaintiff's rights, privileges and immunities under the Constitution of the United States and Title 42 U.S.C. §§1983 and 1988, specifically seeking redress for the deprivation under color of state statute, ordinance, regulation, custom or usage of rights, privileges, and immunities secured by the Constitution and laws of the United States. The rights sought to be protected in this cause of action arise and are secured under the First and Fourteenth Amendments to the Constitution.

6.      This action seeks a judicial determination of issues, rights and liabilities embodied in an actual and present controversy between the parties involving the constitutionality of certain policies and practices of the Defendant. There are substantial *bona fide* doubts, disputes, and questions that must be resolved concerning the Defendant's actions taken under color and authority of "state" law and procedures, in violation of

Plaintiff's rights under the First and Fourteenth Amendments to the United States Constitution.

## VENUE

7.      Venue is proper in the Southern District of Florida, Fort Lauderdale Division, since the laws and policies complained of are those of the City of West Park, Florida, which is within the district and geographical area assigned to the Fort Lauderdale Division.

## THE PARTIES

8.      Plaintiff, B&B ENTERTAINMENT, LLC., owns and operates a gentlemen's club known as "The Playhouse" located at 5775 West Hallandale Beach Blvd., West Park, Broward County, Florida. Plaintiff is the entity beneficially interested in the relief herein sought and seeks to invoke the original jurisdiction of this Court on account of the facts and matters herein stated.

9.      Defendant, CITY OF WEST PARK, Florida ("Westpark" or "City"), is a Florida municipal corporation, organized and operating under the laws of the State of Florida.

## PLAINTIFF'S BUSINESS AND EXPRESSIVE ACTIVITIES

10.      Plaintiff owns and operates an alcoholic beverage establishment in West Park which provides live exotic dance entertainment for its patrons. Plaintiff's business provides adult entertainment in a format commonly referred to as a "gentlemen's club".

11.     Plaintiff purchased the subject business from a predecessor who had operated a gentlemen's club continuously at that location for many decades – since well before the turn of the century.

12.     On information and belief, Plaintiff asserts that the predecessor business was the only gentlemen's club / exotic dancing establishment operating in the City of West Park during the entire period of its operations.

13.     On information and belief, Plaintiff asserts that no other gentlemen's club / exotic dancing establishment has operated in the City of West Park, other than the Playhouse, since 2009.

14.     Plaintiff continued the business format of its predecessor and has operated continuously under that format at its present location since 2009.

15.     On information and belief, Plaintiff alleges that its predecessor in interest held all licenses and permits needed to operate a gentlemen's club at the subject location.

16.     Since the purchase of the business in 2009, Plaintiff holds and has always held all licenses and permits needed to operate a gentlemen's club at the subject location.

17.     The dance provided by Plaintiffs is a form of non-obscene, constitutionally protected expression that is presumptively protected by the First Amendment to the United States Constitution. This expressive activity is performed before a consensual audience, all over the age of eighteen years, desirous of receiving and enjoying the message conveyed by the entertainer of normal human sexual interest in sensual subtleties.

18.     Plaintiff maintain that the human body is a thing of beauty which, when combined with music and rhythmic motion in the form of dance, conveys an important

message of eroticism. Plaintiff believes that providing this form of expressive communication to the public is a beneficial social activity which enhances individuals' conscious ability to assimilate and consider various issues involving sexual candor and the interest in human sexuality that all human beings have to a greater or lesser degree. Plaintiff further believes that this expression enhances the appreciation of the human body, with an emphasis on the consideration of popular contemporary concepts of physical attractiveness and the stimulating and entertaining aspects of same, which are clear characteristics of a normal and healthy interest in human sexuality.

19.     Plaintiff's exotic dance performances communicate a specific message of eroticism which includes both an intellectual component and an emotive component emphasizing sensuality, passion and excitement.

20.     The expression offered by Plaintiff's businesses is not intended to be, nor is it, obscene as contemplated by contemporary community standards. Plaintiff does not intend this expression to appeal to any prurient interest. These performances are presumptively protected by the First Amendment to the Constitution of the United States. Plaintiff has a clear legal right to engage in protected speech of this nature.

21.     This expressive activity is performed before a consensual audience, all over the age of majority.

22.     Defendant objects to the message communicated by the Plaintiff.

23.     The CITY OF WEST PARK has adopted ordinances which are specific to adult entertainment establishments and which regulate those businesses differently from

all other businesses in the community. The regulations pertinent to this action are zoning restrictions which specify where adult businesses can locate.

## THE ADULT ZONING CODE

24.     Plaintiff's business is located in a heavily commercialized strip along West Hallandale Beach Blvd., which in the major east-west arterial road running through the City of West Park. Google Maps aerial images showing the location of the property,[1] together with a wider view showing the property in the context of the major roads and neighborhoods,[2] are attached as Composite Exhibit "A" to this Complaint.

25.     Plaintiff's property is located in a "Tourist Oriented Corridor" and is zoned as "TOC-2". A copy of the City's zoning map showing the location of the property and the "TOC-2" zoning district is attached as Exhibit "B" to this Complaint.[3] An aerial view of

---

[1] Accessible at:

> https://www.google.com/maps/place/5775+W+Hallandale+Beach+Blvd,+West+Park,+FL+33023/@25.9849902,-80.202465,90m/data=!3m1!1e3!4m5!3m4!1s0x88d9aeb16d0d656f:0xeb92d6a0b1d3b262!8m2!3d25.9849572!4d-80.2023295?entry=ttu&g_ep=EgoyMDI1MTIwOS4wIKXMDSoASAFQAw%3D%3D

[2] Accessible at:

> https://www.google.com/maps/place/5775+W+Hallandale+Beach+Blvd,+West+Park,+FL+33023/@25.9846908,-80.2041961,507m/data=!3m1!1e3!4m5!3m4!1s0x88d9aeb16d0d656f:0xeb92d6a0b1d3b262!8m2!3d25.9849572!4d-80.2023295?entry=ttu&g_ep=EgoyMDI1MTIwOS4wIKXMDSoASAFQAw%3D%3D

[3]  Accessible at: https://www.cityofwestpark.org/home/showpublisheddocument/86/637625610799200000

the property showing the subject property located within the TOC-2 zone is attached as

Exhibit "C" to this Complaint.[4]

26.     The TOC districts are intended to promote redevelopment of diverse uses

on relatively small lots lying in vicinity of the City's major arterial roads:

> Sec. 42-290. - Intent.
>
> The Transit-Oriented Corridor District is established to include a rich mix of residential, retail, restaurant, service, and small employment uses within a pedestrian village format. The purpose of this district is to promote redevelopment along State Road 7 (SR7), Hallandale Beach Boulevard and Pembroke Road, along with previously-zoned residential, commercial and industrial districts adjacent to these corridors with a quality mixed-use environment. Land consuming uses, such as large lot housing and large retail outlets are excluded from this district. The TOC district is gridded on developable and redevelopment parcels generally found within one-quarter of mile of the SR7 Hallandale Beach Boulevard and Pembroke Road. Nothing in these regulations shall preclude application for expansion of the TOC beyond those areas, when site-specific development plans demonstrate efficient resident access. The district is intended to serve a residential population of sufficient size to constitute an origin and destination for purposes of rapid transit service along SR7, with enhanced transit service along Hallandale Beach Boulevard, and Pembroke Road.

27.     Plaintiff's underlying use – an alcoholic beverage establishment providing

live entertainment – is consistent with the stated purpose and intent of the TOC districts.[5]

28.     The City has four TOC districts which share almost all standards and

restrictions in common except for certain differences in "Building character" (§42-324)

and maximum density (§42-361). The nature of the TOC-2 district is described in §42-290:

---

[4]     Accessible at: https://gisweb-adapters.bcpa.net/bcpawebmap_ex/bcpawebmap.aspx?
FOLIO=514125021420

[5] Bars, lounges, taverns and pubs are currently allowed as special exceptions in the TOC
zoning district. *See*, §42-231. Permitted uses, Suppl No. 13 at 3 (City's Zoning Matrix).

TOC - 2: This district includes properties along Hallandale Beach Boulevard and Pembroke Road and includes most of the uses allowed in TOC-3, as well as many of the uses in the TOC district. The TOC-2 district has a maximum height of 35 feet.

29.     Plaintiff's property conforms to the requirements of the TOC-2 zoning, including those unique standards for Building character and density.

30.     Plaintiff's property is designated "Commercial" pursuant to the City's Future Land Use Map. A copy of the portion of the Future Land Use Map showing the commercial designation is attached as Exhibit "D" to this Complaint.[6]

31.     Plaintiff's use of the property as a gentlemen's club is a commercial use and is consistent with the City's Comprehensive Plain and the "commercial" designation.

32.     When Plaintiff's predecessor established the gentlemen's club in decades past, it did so as a lawful, conforming use. The property has always been zoned commercial which is suitable for the underlying use (alcohol sales coupled with live entertainment). In addition, there were no zoning regulations specific to adult entertainment establishments at the time Plaintiff's predecessor opened.

33.     In 2007, the City enacted Ordinance 2007-02 which specifically regulated adult entertainment establishments for the first time.

34.     The provisions relative to zoning and locational criteria for adult entertainment establishments have been codified as Chap. 42, Article VIII, Division 3, §42-

---

[6]     Accessible at: https://www.cityofwestpark.org/home/showpublisheddocument/80/637625610785500000

498, et. seq. (hereinafter referred to as the "Adult Zoning Code").[7] A copy of the Adult

Zoning Code is attached as Exhibit "E" to this Complaint.

36.     In addition to the "distance limitations" found in the Adult Zoning Code

(§42-499), the City restricts the particular zones in which an adult entertainment

establishment can location. Those restrictions are found in §42-231. Permitted uses (the

"Zoning Matrix"). A copy of the West Park Zoning Matrix is attached as Exhibit "F" to

this Complaint.

35.     Plaintiff's gentlemen's club falls within the definition of an "Adult dancing

establishment" under §42-34 of the Zoning Code:

> *Adult dancing establishment* means an establishment where employees
> display or expose specified anatomical areas to others, regardless of
> whether the employees actually engage in dancing.

A copy of §42-34 – the general definitional section of the West Park Zoning Code - is

attached as Exhibit "G" to this Complaint.

36.     Because, Plaintiff's business falls within the definition of "adult dancing

establishment" it is also regulated as an "adult entertainment establishment" under §42-34

of the Adult Zoning Code:

> Adult entertainment establishment.

> (1)     The term "adult entertainment establishment" means an adult
> arcade, adult theater, adult bookstore, adult motel, adult dancing
> establishment, encounter studio or other establishment other than a private
> residence, where an employee, operator, owner, customer, member or

---

[7]     Ordinance 2007-02 also included licensing requirements and general regulations
pertaining to adult entertainment establishments which were separately codified as Chap.
22, Article VIII, Division 3, §22-50, *et seq.* of the West Park Code of Ordinances. Those
provisions are not directly relevant to this litigation.

patron exposes any of his or her specified anatomical areas for viewing by other patrons, or where adult material is provided to customers, patrons or members, including, but not limited to, massage establishments, whether or not licensed pursuant to F.S. ch. 480, tanning salons, modeling studios or lingerie studios. For the purposes of this chapter, alcoholic beverage establishments providing adult entertainment shall be included in the definition of "adult entertainment establishment."

(2)     The term "adult entertainment establishment" does not include educational centers, where the exposure of specified anatomical areas is associated with a curriculum or program.

37.     Pursuant to the Zoning Matrix (§42-231), Adult entertainment establishments are permitted only in the M-1 and M-2 zoning districts.[8]

38.     In addition to being restricted to the M-1 and M-2 districts, Adult entertainment establishments are also subject to unique "distance limitations" which require that they be set back from certain other uses. Those "distance limitations" appear in §42-499 of the Adult Zoning Code:

(a)     No adult entertainment establishment shall be located or operated nearer to any other adult entertainment establishment nor nearer than 1,000 feet to any place of worship, child care center or educational center, except vocational and technical schools, colleges and universities. Measurement of the 1,000 feet shall be made in accordance with subsections (c) and (d) of this section.

(b)     No adult entertainment establishment shall be located or operated nearer than 500 feet to a residentially zoned district. Measurement of the 500 feet shall be made in accordance with subsections (c) and (d) of this section.

(c)     For the purposes of this section, an adult entertainment establishment shall be deemed to be within:

---

[8] The M-1 and M-2 are the City's industrial districts. *See*, §§42-229(f) and (g).

(1)    1,000 feet of another adult entertainment establishment, place of worship, child care center or educational center, excluding vocational and technical schools, colleges and universities;

(2)    500 feet of a residentially zoned district, if any part of the building in which an adult entertainment establishment is proposed to be located is within 1,000 feet of the plot where another adult entertainment establishment is located;

(3)    1,000 feet of the plot of land upon which a place of worship, child care center or educational center, excluding vocational and technical schools, colleges and universities, is located; or

(4)    500 feet of the district boundary line of a residentially zoned district;  as measured by an actual or imaginary straight line upon the ground or in the air.

39.    Plaintiff's property is not located in the M-1 or M-2 district nor does it meet the distance limitations of §42-499 of the Adult Zoning Code.

40.    The enactment of the Adult Zoning Code meant that Plaintiff's property was no longer a conforming use. However, Plaintiff's predecessor had established vested rights under Florida law and the gentlemen's club remained a lawful, non-conforming use after the enactment of the Adult Zoning Code. That is the property was "grandfathered in" and Plaintiff's predecessor was allowed to continue operating its gentlemen's club in the TOC-2 zone.

41.    The same was initially true for Plaintiff: the property was a lawful, nonconforming use at the time Plaintiff purchased it in 2009; Plaintiff had acquired vested rights; and Plaintiff was allowed to continue operating the gentlemen's club as a grandfathered use following the enactment of the Adult Zoning Code.

42.     The City maintains that Plaintiff's vested rights have been fully amortized and that Plaintiff has lost its grandfather rights pursuant to §42-501 of the Adult Zoning Code, which reads as follows:

Sec. 42-501. Nonconforming establishments.

Any existing licensed adult entertainment establishment, which conformed to the regulations in effect when such adult entertainment establishment was established, that becomes nonconforming by the enactment of this division shall be removed or discontinued within five years of the effective date of the ordinance from which this chapter is derived.[9]

43.     Despite the nominal expiration of the amortization pursuant to §42-501, the City has issued all licenses and permits necessary to the operation of Plaintiff's business on an annual basis since Plaintiff purchased the business in 2009.

44.     The current City Commissioners and administrators have broken from past practices and have actively undertaken efforts to shut down Plaintiff's gentlemen's club.

45.     A majority of the members of the City Commission have been engaged in a campaign to forcibly close Plaintiff's business through direct action or through harassment which would ultimately force Plaintiff to cease its communications and shutter its doors.

46.     That campaign began with an effort to close Plaintiff through zoning measures. At some point before June, 2025, one or more City Commissioners directed City staff to determine how the City Plaintiff's business could be "removed or discontinued".

---

[9] The Municipal Code Service shows that §42-501 was enacted on February 21, 2007. Accordingly, the amortization period would have expired on February 21, 2012.

47.     A City staff memorandum dated June 4, 2025, explained that the City

could utilize §42-501 to force the closure of Plaintiff's business:

> Formal notice would be required to be provided to the existing business
> owner by the City's Planning & Zoning Department identifying the specific
> non-conforming conditions in accordance with City Code Section 42-501;

A copy of the June 4, 2025 Memorandum is attached as Exhibit "H" to this Complaint.[10]

48.     Given the City's recent actions toward enforcement of the amortization

provision, and considering that §42-501 remains enforceable and "on the books", Plaintiff

reasonably fears that the City's unconstitutional Adult Zoning Code will be enforced

against it.

## COLOR OF STATE LAW

49.     As a political subdivision of the State of Florida, organized and operating

under the laws of the State of Florida, the CITY OF WEST PARK and its agents,

were, and are, acting under color of state law and authority.

## ALLEGATIONS IN SUPPORT OF INJUNCTIVE RELIEF

50.     Plaintiff is suffering irreparable injury and is threatened with irreparable

injury in the future because the Defendant has enacted a zoning ordinance which

---

[10] In addition to pursuing closure of Plaintiff's business through amortization, the City has
sought to harass the Plaintiff by threatening to revoke its permit to sell alcohol for extended
hours. That item was initially placed on the City Commission's agenda for action on
October 15, 2025. However, Plaintiff challenged that action in state court in the case of
B & B Entertainment, LLC v. City of West Park, Florida, Case No.: CACE-25-015702
(Fla. 17th Jud. Cir. Broward Cty). That litigation concerns an entirely different dispute
involving different ordinance provisions, none of this overlap with the Adult Zoning Code
at issue here. There are no enforcement actions pending against Plaintiff in connection with
the after hours permit.

purportedly makes its present business unlawful and because the City has recently taken actions to censor and prohibit Plaintiff's expressive activities through enforcement of the amortization provision, §42-501.

51.     The threatened and ongoing injury to Plaintiff's First Amendment rights and property rights will continue in the future, should an injunction not issue. Plaintiff has no adequate remedy at law.

52.     A permanent injunction will preserve Plaintiff's civil rights and reduce the need to compensate Plaintiff with money damages for further violations of its rights.

53.     The harm that would be suffered by the Plaintiff without an injunction - the loss of its constitutional rights - exceeds any conceivable harm the City would suffer if it is prohibited from enforcing its unconstitutional Ordinances.

54.     A permanent injunction prohibiting enforcement of those unconstitutional Ordinances would not be contrary to the public interest.

55.     Plaintiff has retained BENJAMIN, AARONSON, EDINGER & PATANZO, P.A. as its attorneys to represent it in this action and has agreed to pay them a reasonable fee, which fee Defendant must pay pursuant to 42 U.S.C. §1988.

## COUNT I
### (Insufficient Alternative Avenues of Communication)

56.     Plaintiff realleges the facts set forth in Paragraphs 1 through 55 of this Complaint and incorporates those facts into this Count by reference.

57.     This is an action for declaratory relief pursuant to 28 U.S.C. §2201 brought against the CITY OF WEST PARK, FLORIDA.

58. The City's Zoning Code restricts the location of Adult Entertainment Establishments' including Plaintiff's.

59. The First Amendment requires that every city provide sufficient locations where an adult entertainment establishment can open and operate as a matter of right. *See*, Renton v. Playtime Theatres, Inc., 475 U.S. 419 (1986); Lady J. Lingerie, Inc. v. City of Jacksonville, 176 F.3d 1358 (11th Cir. 1999).

60. Cities cannot completely ban adult entertainment establishments through use of their zoning codes; that is, a "zone out" is unconstitutional. Id.

61. A city is constitutionally prohibited from utilizing its zoning laws to reduce the number of adult businesses below the current number of operating businesses; i.e. a city may not combat adverse secondary effects by reducing the number of businesses engaged in expression. *See*, Fly Fish, Inc. v. City of Cocoa Beach, 337 F.3d 1301 (11th Cir. 2003).

62. Section 42-501, and the City's recent efforts to enforce its amortization provisions, threaten to eliminate Plaintiff's vested rights and force the closure of its business.

63. If Playhouse closes, there will be no adult entertainment establishments operating anywhere in the City of West Park.

64. There are no conforming locations to which Playhouse can relocate. In particular Plaintiff alleges:

A. The City restricts adult businesses to the M-1 and M-2 districts. *See*, §42-231.

B.      There are no conforming sites in the M-1 or M-2 districts because every lot lying within those districts violates one or more of the distance limitations in §42-499.

C.      The City of West Park is very small, comprising no more than 2.26 square miles. Even a cursory examination of the City's zoning map shows that all of the land zoned M-1 or M-2 lies within 500 feet of a residentially zoned district. *See*, §42-499(b).

D.      The distance limitations also include a 1,000 foot set back from churches. *See*, §42-499(b). But there are multiple churches in that area which would disqualify all or much of the M-1 / M-2 district, including:

- Star of Bethlehem Baptist Church
  5401 SW 24th St, West Park, FL 33023

- Prince of Peace Baptist Church
  5500 SW 24th St, West Park, FL 33023

- Grace and mercy Deliverance Center
  5607 SW 27th St, West Park, FL 33023

65.     The West Park Zoning Code does allow adult entertainment establishments to locate in any zone other than the M-1 or M-2 through special exception, conditional use permit or variance. *See, generally*, 42-293 "Any use or structure not specifically, provisionally or by reasonable implication permitted in this chapter is prohibited."); *See, also*, Zoning matrix.

66.     Failure to provide sufficient locations where First Amendment-protected adult businesses may open and operate as a matter of right renders a zoning code facially unconstitutional and unconstitutional as applied to adult businesses, including Plaintiff's business.

67.     The CITY OF WEST PARK has imposed a complete zone out on adult entertainment businesses, including Plaintiff's.

68.     Plaintiff is entitled to operate the Playhouse business at its present location as a lawful *conforming* use because its business was open and operating at a time when the City had no constitutional adult zoning ordinance in place.

WHEREFORE Plaintiff prays for the following relief:

A.     That this Court takes jurisdiction over the parties in this cause;

B.     That this Court determine and declare that the City of West Park Zoning Code is unconstitutional on its face and as applied to Plaintiff because it fails to provide adequate (or any) alternative avenues of communication.

C.     That this Court declare that Plaintiff has the right to open and operate an adult business at its present location as a lawful conforming use.

D.     That this Court enter an Order permanently enjoining the CITY OF WEST PARK from enforcing those portions of the Zoning Code which regulate the location of adult businesses, including the Plaintiff's business.

E.     That this court award Plaintiff its recoverable costs, including reasonable attorney's fees pursuant to 42 U.S.C. §1988; and

G.     That this Court award Plaintiff all other relief in law and in equity to which it may be entitled.

## COUNT II

## (The Definitions of "Adult Dancing Establishment and "Adult Entertainment Establishment" are Unconstitutionally Overbroad on their Face)

69.     Plaintiff realleges the facts set forth in Paragraphs 1 through 55 of this Complaint and incorporates those facts into this Count by reference.

70.     This is an action for declaratory relief pursuant to 28 U.S.C. §2201 brought against the CITY OF WEST PARK, FLORIDA.

71.     The City's regulation of adult businesses through the Zoning Code employs definitions which render the Code substantially overbroad in violation of the First Amendment. In particular, the law sweeps within its scope conventional entertainment and occasional displays of nudity which are not associated with adverse secondary effects.

72.     The definitions of "Adult Dancing Establishment" and "Adult Entertainment Establishment in §42-34 are triggered anytime an employee "exposes any of his or her specified anatomical areas for viewing by other patrons".

73.     That definition would apply on its face to even a single display of nudity or partial nudity; there are no temporal limitations based on regularity or frequency of the displays.

74.     The Zoning Code does not include a sufficient safe harbor provision so that much mainstream entertainment are potentially subject to regulation as an adult entertainment establishment. The only exception to the obviously overbroad definition is for "educational centers":

(2) The term "adult entertainment establishment" does not include educational centers, where the exposure of specified anatomical areas is associated with a curriculum or program.

75.     The exception for "educational centers" does not extend to many "mainstream" venues where nudity may occur in the course of an expressive performance, including playhouses, theaters, and ballet and other dance halls. The Code itself defines "educational centers" so narrowly that it excludes any of those facilities which are not actually engaged in education (as opposed to entertainment, political protests or any other expression):

> Educational center or school means a premises or site upon which facilities of public or private primary or secondary schools, vocational and technical schools, colleges and universities licensed by the state department of education are located, including the areas of buildings, campus open space, dormitories, recreational facilities and parking.

*See*, §42-34, "Educational center or school". The rules of statutory construction suggest that the narrow definition employed was specifically intended to exclude all other instances where nudity or partial nudity may occur.

76.     The narrow exclusion for educational centers also fails to except locations where nudity is expected or required. Exceptions in typical ordinances include "areas which are traditionally set apart for nudity" (such as doctor's offices and nudist or naturist camps).

77.     The failure to confine the definition of "adult dancing establishment" and "adult entertainment establishment" to frequent and recurring performances and the failure to expressly exclude mainstream performances from the scope of the law will have an inevitable chilling effect on free speech of others not before the Court.

78.     Because the overbreadth is rooted in the foundational definitions of the Zoning Code, no part of the City's adult business zoning is enforceable, including the locational criteria and the amortization provision in §42-501.

WHEREFORE Plaintiff prays for the following relief:

A.     That this Court takes jurisdiction over the parties in this cause;

B.     That this Court determine and declare that the definition of "Adult Dancing Establishment" and "Adult Entertainment Establishment" in §42-34 are substantially overbroad and, therefore, the Zoning Code relative to adult businesses is unconstitutional and unenforceable in its entirety.

C.     That this Court determine and declare that the incorporation and use of the §42-34 definitions of "Adult Dancing Establishment" and "Adult Entertainment Establishment" render the West Park Adult Entertainment Code, Chap. 42, Article VIII, Division 3, §42-498, *et. seq.* unconstitutionally overbroad and unenforceable.

D.     That this Court enter an Order permanently enjoining the CITY OF WEST PARK from enforcing the §42-34 definitions of "Adult Dancing Establishment" and "Adult Entertainment Establishment", as well as the West Park Adult Entertainment Code, against Plaintiff.

E.     That this court award Plaintiff its recoverable costs, including reasonable attorney's fees pursuant to 42 U.S.C. §1988; and

F.     That this Court award Plaintiff all other relief in law and in equity to which it may be entitled.

*Respectfully submitted,*

BENJAMIN, AARONSON, EDINGER
& PATANZO, P.A.

/s/  James S. Benjamin
DANIEL R. AARONSON, Esquire
Florida Bar No.: 314579
JAMES S. BENJAMIN, Esquire
Florida Bar No.: 293245
1700 East Las Olas Blvd., Suite 202
Ft. Lauderdale, Florida 33301
(954) 779-1700  (Fax) (954) 779-1771
danaaron@bellsouth.net
sexlaw@bellsouth.net

/s/  Gary S. Edinger
GARY S. EDINGER, Esquire
Florida Bar No. 0606812
305 N.E. 1st Street
Gainesville, Florida 32601
(352) 338-4440  (Fax) (352) 337-0696
GSEdinger12@gmail.com

*Attorneys for Plaintiff*